ANSTEAD, J.
In this case, we consider whether the Legislature intended for certain criminal statutory fees and surcharges to apply to juveniles in juvenile delinquency proceedings. In the decision below, the Fifth District Court of Appeal, noting that it was bound by its prior decision in S.S.M. v. State, 898 So.2d 84 (Fla. 5th DCA 2004), upheld the imposition of such surcharges in juvenile delinquency proceedings. V.K.E. v. State, 902 So.2d 343, 344 (Fla. 5th DCA 2005). The court certified the issue to us as one of great public importance: “Does a trial judge have the power and authority to impose on juveniles in a juvenile delinquency proceeding, the mandatory surcharges set forth in sections 938.08 and 93[8].085?” Id. at 344.[1] We have discretionary jurisdiction and granted review. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we answer *1278 “no” to the certified question and approve of the views and analysis set out in the concurring opinion of Judge Sharp. We therefore quash the district court’s decision in V.K.E.
FACTUAL AND PROCEDURAL BACKGROUND
Petitioner V.K.E., an eleventh grade high school student and a juvenile, was involved in an altercation with another student and entered a plea of nolo contendere to a delinquency petition asserting the commission of a simple battery under the provisions of section 784.03, Florida Statutes (2001), a misdemeanor. The trial court withheld adjudication of delinquency, placed V.K.E. on probation, and ordered her, among other things, to pay $852.66 in restitution, $140 in attorneys fees, and two surcharges- — $201 in domestic .violence costs and $151 to the rape crisis fund— within sixty days. V.K.E. appealed the imposition of the surcharges. The district court affirmed, relying on its prior decision in S.S.M., and certified the question quoted above. V.K.E., 902 So.2d at 344.
ANALYSIS
We find the analysis set out in Judge Sharp’s separate opinion below provides a reliable guide to legislative intent and the correct answer to the certified question.[2] We further conclude that the overriding indications of legislative intent discussed by Judge Sharp should control the outcome here: first, the Legislature has created a juvenile justice system as a totally separate and distinct rehabilitative alternative to the punitive criminal justice system, and not as a subset of that system with all of its attendant punitive measures and costs;[3] second, the Legislature has expressly provided in certain instances for the taxation of criminal justice costs and surcharges against delinquents but has not done so here;[4] and third, the Legislature has actually spoken on the issue before us by expressly providing that court fees and costs should not ordinarily be imposed in juvénile proceedings. Moreover, we conclude that a contrary holding would open the door to the assessment in juvenile proceedings of the unrelated costs, fees, and surcharges provided for in the adult criminal system without a clear legislative mandate to do so. This in turn would impair the ability of the juvenile system to focus on and serve its legislatively mandated rehabilitative function.
Because Judge Sharp has fully and cogently articulated these principles of legislative, intent, we adopt her analysis as our own and set it out in full:
I am bound by this court’s opinion in S.S.M. v. State, 898 So.2d 84 (Fla. 5th *1279 DCA 2004), but were that not the case I would have resolved this issue differently. In this special concurring opinion, I write to explain my reasons for disagreeing with S.S.M.
In S.S.M., a child was assessed a $201.00 surcharge pursuant to section 938.08, Florida Statutes. She pled guilty to two counts of battery, first degree misdemeanors. In this case, V.K.E. pled guilty to a charge of simple battery, a first degree misdemeanor, and was surcharged $201.00 pursuant to section 938.08, Florida Statutes and $151.00 pursuant to section 938.085, Florida Statutes.
Sections 938.08 and 938.085 are part of the “general” adult criminal statutes contained in Chapter 938. They belong to Part II of that Chapter entitled “Mandatory Costs in Specific Types of Cases.” That Part imposes various charges, sometimes described as “costs” or “surcharges” on persons who have violated specific criminal statutes. Funds raised from these surcharges or costs are designated to go to various state and local programs; i.e., the Emergency Medical Services Trust Fund; the Criminal Justice Standards and Training Trust Fund; the Brain and Spinal Cord Injury Rehabilitation Trust Fund; and the County Alcohol and Other Drug Abuse Trust Fund; and the Department of Children and Family Services Child Advocacy Trust Fund for the Florida Network of Children’s Advocacy Centers, Inc.
In the case of section 938.08, $85.00 of the surcharge goes to the Domestic Violence Trust Fund, $1.00 to the Clerk of the Court as a service charge, and the balance to the county to defray costs of incarcerating persons sentenced under section 741.238 (minimum term of imprisonment for domestic violence). In the case of section 938.085, the surcharge goes to the Rape Crisis Program Trust Fund, and $1.00 to the Clerk of Court as a service charge.
In both this case and S.S.M., the juveniles against whom the surcharges were assessed are young females. Neither case involved domestic violence or rape. Incongruously, they appear to be persons in the “victim” category for the general benefit of whom these surcharges are being imposed.
In addition to Part II, Chapter 938 contains Part I, Mandatory Costs in All Cases. For a violation of a state criminal statute or municipal or county ordinance (to benefit the Additional Cost Clearing Trust Fund), section 938.01 imposes a $3.00 court cost and section 938.03 imposes $50.00 as an additional cost for the violation of any criminal law, for the benefit of the Crimes Compensation [T]rust Fund. However, this statute specifically was revisited by the Legislature and made expressly applicable to delinquency proceedings. It reads:
Any person pleading guilty or nolo contendere to, or being convicted of or adjudicated delinquent for, any felony, misdemeanor, delinquent act, or criminal traffic offense under the laws of this state, or the violation of any municipal or county ordinance .... (emphasis added)
Part I also contains two other sections requiring the imposition of court costs. For the violation of any criminal offense, section 938.05 imposes from $50.00 to $200.00, for the benefit of the Fine and Forfeiture Fund, and section 938.06 imposes, as a court cost, a $20.00 surcharge on any fine, for the benefit of the Crime Stoppers Trust Fund.
*1280 In addition, Part IV provides for discretionary assessment of costs in specific types of cases to benefit alcohol and drug abuse programs, the Operating Trust Fund of the Department of Law Enforcement, and costs of prosecution upon conviction including investigative costs and attorneys fees for public defenders. Chapter 939 also contains additional cost assessment statutes, applicable if a person violates any kind of criminal statute or ordinance of this state. The “court costs” of $65.00 must be used to fund innovations to supplement state funding for the elements of the state courts system, to assist counties to provide legal aid programs, to fund public law libraries, and to support teen court programs, juvenile assessment centers, and other juvenile alternative programs.
The rationale used in S.S.M., to justify imposition of the surcharge pursuant to section 938.05, was that the statute assesses this surcharge for a violation of section 784.03 (battery statute), and section 985.03(58) defines “violation of law” or a “delinquent act” as a “violation of any law of this state.” [n.l]
[n.1] Section 985.03(58) provides:
Violation of law’ or ‘delinquent act’ means a violation of any law of this state, the United States, or any other state which is a misdemeanor or a felony or a violation of a county or municipal ordinance which would be punishable by incarceration if the violation were committed by an adult.
This definition comes from Chapter 985, the Chapter which deals with juvenile delinquency. In my view, it has no relevancy to Chapter 938. Indeed, the statute expressly provides that the Chapter 985 definitions apply only “when used in this Chapter;” i.e., Chapter 985.
Section 985.228(6), Florida Statutes, provides further:
An' adjudication of delinquency by a court with respect to any child who has committed a delinquent act or violation of law shall not be deemed a conviction; nor shall the child be deemed to have been found guilty or to be a criminal by reason of that adjudication; nor shall that adjudication operate to impose upon the child any of the civil disabilities ordinarily imposed by or resulting from conviction to disqualify or prejudice the child in any civil service application or appointment, with the exception of use of records of proceedings under this part as provided in s. 985.05(a).
Section 985.233(5)(b) also provides the court must impose either an adult sanction or a juvenile sanction, but not a combination.
If, however, the rationale of S.S.M. is accepted, there is no logical limit to assessing juveniles being prosecuted under Chapter 985, with not only the surcharges under sections 938.08 and 938.085, but all, if not many, of the surcharges or court costs set forth in Chapter 938, outlined above, because all of those statutes impose “court costs” or surcharges for funding state and local law enforcement programs based on the fact that a person has violated a state criminal law or municipal ordinance or criminal traffic offense. If sections 938.08 and 938.085 are applicable to juvenile delinquency cases, then all of the costs and assessments provided for in Chapter 938, for the adult penal system, are logically applicable to juveniles.
I do not think that this is what the Legislature intended. The statutory scheme sets up a separate procedure *1281 and system for handling juveniles who violate the state/county/city criminal laws, different and apart from the adult system. The stated public policy underlying Chapter 985 is to protect children involved in the juvenile justice system, and to insure their care, safety, treatment, education and rehabilitation, [n.2]
[n.2] For example, section 985.02(1) provides:
985.02. Legislative intent for the juvenile justice system.
(1). General protections for children. It is a purpose of the Legislature that the children of this state be provided with the following protections:
(a) Protection from abuse, neglect, and exploitation.
(b) A permanent and stable home.
(c) A safe and nurturing environment which will preserve a sense of personal dignity and integrity.
(d) Adequate nutrition, shelter, and clothing.
(e) Effective treatment to address physical, social, and emotional needs, regardless of geographical location.
(f) Equal opportunity and access to quality and effective education, which will meet the individual needs of each child, and to recreation and other community resources to develop individual abilities.
(g) Access to preventive services.
(h) An independent, trained advocate when intervention is necessary, and a skilled guardian or caretaker in a safe environment when alternative placement is necessary.
(i) Gender-specific programming and gender-specific program models and services that comprehensively address the needs of a targeted gender group.
It should not follow, without a solid basis, that adult criminal sanctions be imposed on juvenile offenders.
Chapter 985 disfavors detention and limits harsher sanctions if other alternatives are available. Yet, sections 988.08 and 938.085 make the payment of substantial funds by the juvenile a condition of not being placed in detention. Most children are not wage earners nor are they expected to be. If a child needs large sums of money to avoid detention, the burden will fall on the child’s parents or guardians.
Although parents and guardians have been tasked with payment of costs or expenses for delinquent children, as well as payment of restitution in certain situations under chapter 985, those instances have been specifically provided for and defined by the Legislature, in Chapter 985. See § 985.231(9), Fla. Stat. They are quite different than the scheme devised in Chapter 938. For example, sections 985.215 and 985.231(10) allow the court to impose a fee of $5.00 per day payable to the Department of Juvenile Justice to offset the cost of care, support, and maintenance of the child against the parents or guardians, unless they are indigent. Section 985.231 requires the court to devise a penalty component such as restitution in money or kind for an adjudicated delinquent child. Restitution • ordered may not exceed an amount the child and the parent or guardian reasonably can be expected to make or pay. And, parents or guardians who are not indigent can be ordered to pay for attorney’s costs, as provided for in section 938.29. See § 985.203, Fla. Stat.
*1282 •In the past, this court has adhered to the theory that unless the Legislature expressly makes a cost or surcharge imposed by Chapter 38[sic] applicable to juvenile delinquency cases, such costs or surcharges are not applicable to juveniles. See P.P. v. State, 671 So.2d 894 (Fla. 5th DCA 1996). That case held that additional “costs” of $50.00 for the benefit of the Crimes Compensation Trust Fund should be assessed against all persons, including delinquents, based on the express language used in the statute, section 960.20(1) [renumbered 938.03], which made it clear the Legislature intended them to be assessed in juvenile cases.[n.3]
[n.3] As noted above, that statute provides:
Any person pleading guilty or nolo contendere to, or being convicted of or adjudicated delinquent for, any felony, misdemeanor, delinquent act, or criminal traffic offense under the laws of this state, or the violation of any municipal or county ordinance which adopts by reference any misdemeanor under state laws, shall pay as an additional cost in the case, in addition and prior to any other cost required to be imposed by law, the sum of $50.00 ... (emphasis added)
Both P.P. and J.A. v. State, 633 So.2d 108 (Fla. 2d DCA 1994), noted that section 985.221, a statute passed prior to section 938.03, provides that in proceedings under Chapter 985, “court fees shall not' be charged against nor witness fees allowed to, any party to a delinquency petition or any parent or legal guardian.” However, the courts held that the older statute had been partially overturned by section 938.03 because of the express language used in the newer statute.
One could make a semantical argument that court “fees” are not “court costs” or “surcharges” and thus section 985.221 never prohibited the imposition of surcharges or court costs under Chapter 938. None of these terms is defined in Chapter 985 and Chapter 938 uses the terms interchangeably. In my view, that leads to the same logical dilemma left by S.S.M. Are all or most of the costs and surcharges, including those specified in 938.08 and 938.085, provided for in Chapter 938 applicable in juvenile delinquency cases simply because they involve violations of state, county, or municipal law?
Because the two penal systems for handling adults and juveniles are so different and guided by such different philosophies and goals, I believe the better answer is that unless the Legislature expressly makes an adult sanction, cost or surcharge expressly applicable to the juvenile system, it should not be applicable. Sections 938.08 and 938.085 make no reference to delinquency proceedings. Thus I would have concluded that the trial court erred in this juvenile case, in imposing the surcharges against V.K.E., pursuant to sections 938.05 and 938.085.
V.K.E., 902 So.2d at 344-47 (Fla. 5th DCA 2005) (Sharp, J., concurring specially).
CONCLUSION
In sum, we agree with the reasoning of Judge Sharp and her conclusion that the Legislature has demonstrated its awareness of its broad authority to provide for the taxation of costs, fees, and surcharges in both adult and juvenile delinquency proceedings, but has not provided for the assessment of costs under sections 938.05 and 938.085 in juvenile delinquency proceedings. Accordingly, we answer the cer *1283 tified question in the negative, quash the decision of the district court, and remand for further proceedings consistent herewith.
It is so ordered.
LEWIS, C.J., and PARIENTE, and QUINCE, JJ., concur.
PARIENTE, J., specially concurring with an opinion, in which ANSTEAD, J., concurs.
CANTERO, J., dissents with an opinion, in which WELLS and BELL, JJ., concur.
BELL, J., dissents with an opinion.

. To date, the Second and Fifth District Courts of Appeal have certified the same question in a combined eleven cases. We have stayed the remaining cases pending our disposition of this one.

.A frank response to the question before us may be that we do not really know with certainty the precise answer to the question posed concerning what the Legislature intended because the Legislature has treated the issue of the assessment of costs and surcharges in a wide variety of ways, sometimes expressly providing for assessment in juvenile proceedings and sometimes not. However, because the question must be resolved in order to review the juvenile court’s assessment of costs, we must do our best to provide an answer.

. The most serious sanctions provided by the Legislature for the violation of the criminal statutes in question are punitive sanctions such as imprisonment in the state prison system, sanctions wholly inapplicable to juvenile proceedings.

. Of course, if the Legislature had expressly provided for an assessment in juvenile proceedings, as it has done in other instances, we would have no issue to resolve. The plain meaning of such a provision would control.